IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) Criminal No. 3:13CR022 |
| | ) |
| DAVID EDWARD SLEEZER, | ) |
| | ) |
| *Defendant.* | ) |

## POSITION OF THE UNITED STATES WITH RESPECT TO SENTENCING AND RESPONSE TO DEFENDANT'S OBJECTION REGARDING SENTENCING GUIDELINE ENHANCEMENT

The United States of America, by and through its undersigned counsel, hereby submits its position with respect to sentencing factors. The United States concurs with the Probation Officer's determination that the defendant's Total Offense Level is 37 and that his Criminal History Category is I. *See* Presentence Report ("PSR"), Worksheet D. The defendant's applicable Guideline range is 210-262 months, with a restricted guideline range of 210-240 months. *Id.* In his sentencing position, the defendant has objected to the application of U.S.S.G. §2G2.2(b)(3)(B) to the calculation of his sentencing guideline range. Defendant's Sentencing Position, pp.3-13.

While the United States posits that the guideline range, as calculated, is correct, it nevertheless submits that the instant case warrants a variance sentence of 144 months, and that such a sentence is sufficient but not greater than necessary to achieve the goals of sentencing contained in 18 U.S.C. § 3553(a). A sentence of 144 months will simultaneously address the seriousness of the defendant's conduct and bring this case in line with other sentences handed

1

down by this Court.

## I. Background

The facts of this particular case are not in dispute. The defendant's extensive offense conduct is outlined in both the agreed upon Statement of Facts and the Presentence Report. PSR ¶¶ 6-8. In September and October of 2012, undercover agents with the Federal Bureau of Investigation ("FBI") observed the defendant sharing child pornography movies over the Internet on the Ares peer-to-peer network. PSR ¶6. The agents subsequently downloaded two videos from the defendant's computer containing child pornography. *Id.* After gathering information concerning the Internet Protocol address associated with the peer-to-peer account, agents executed a search warrant at the defendant's neighbor's residence. *Id.* Agents eventually realized they were at the wrong house and after further investigation discovered that the defendant had been stealing his neighbor's wireless Internet connection and utilizing it to share child pornography. *Id.* They consequently executed another search warrant at the defendant's residence, and while executing the warrant encountered the defendant actively sharing 51 child pornography files over the Ares peer-to-peer network on his computer. *Id.*

Agents seized a computer and two thumb drives from the defendant's residence, all of which were later confirmed to contain child pornography. *Id.* A subsequent forensic examination of this equipment revealed that the defendant sought out, downloaded, and saved 393 images and 473 videos of child sexual abuse, which, pursuant to Application Note 4(B)(ii) of section 2G2.2 of the U.S. Sentencing Guidelines, equates to 35,868 images. PSR ¶¶ 7-8. Many of these images and videos involved prepubescent children engaged in sexually explicit conduct, including 11 videos which contained sadomasochistic conduct and bestiality. PSR ¶6.

## II. Response to Objection to Applicability of Sentencing Enhancement

In his sentencing position, the defendant objects to the application of the five-level sentencing guideline enhancement for distribution for the receipt, or expectation of receipt, of a thing of value pursuant to U.S.S.G. §2G2.2(b)(3)(B). Def. Sent. Position, pp.3-13; PSR, p. A-2. Within this, the defendant does not object to whether child pornography is a "thing of value," or that he distributed child pornography, but rather asserts that he did not have an "expectation of receipt" of child pornography. Def. Sent. Position, pp.3-13.

Thus, the issue pared down for the Court's consideration is whether this defendant had an expectation of receipt of child pornography where the defendant sought out, installed, and then utilized a peer-to-peer program on his computer to share child pornography. Fundamentally, the issue strikes at the true nature of peer-to-peer programs.

A defendant with an objection to findings in a presentence report has a burden to come forward with an affirmative showing to the contrary, and a mere objection to the finding is not sufficient. *United States v. Love*, 134 F.3d 595, 606 (4th Cir. 1998). A sentencing court must apply sentencing guideline enhancements based on a preponderance of the evidence, and the district court's decisions in this regard are given "great deference." See *United States v. Vinson*, 886 F.2d 740 (4th Cir. 1989); *United States v. Feurtado*, 191 F.3d 420, 424 n.2, (4th Cir. 1999).

Courts of the Eastern District of Virginia have routinely applied the §2G2.2(b)(3)(B) enhancement in cases where the defendant has solely used peer-to-peer programs to distribute child pornography, and one published opinion supports this. In *United States v. Clint McVey*, 476 F.Supp. 2d 560 (E.D.V.A. 2007), the defendant, as in the instant case, objected to the application of U.S.S.G. §2G2.2(b)(3)(B). In *McVey*, the evidence showed that the defendant, like

3

Sleezer, utilized a peer-to-peer program to distribute child pornography. *Id.* at 561. There was no other evidence that the defendant had specifically sought out an individual to personally communicate with them in an attempt to trade child pornography. *Id.* The Government introduced evidence at sentencing to show the process by which one installs the particular peer-to-peer program at issue. *Id.* at 561-62. The Court overruled the defendant's objection and, noting that the distribution of child pornography was not the result of an agreement or understanding between the defendant and another person, held that the enhancement nevertheless applied where defendant distributed child pornography "in anticipation of, or *while reasonably believing the possibility of*, the receipt of a thing of value." Id. at 563, *quoting United States v. Maneri*, 353 F.3d 165, 169 (2nd Cir. 2003) (emphasis added). The Court went on to state that, "It is undisputed that the very purpose of belonging to any file-sharing group is to facilitate the receipt of files from others by agreeing to allow other persons access to the files on one's own computer." *Id.*

In *United States v. Strieper*, 666 F.3d 288 (4th Cir. 2012), the Fourth Circuit touched upon the issue of application of §2G2.2(b)(3)(B) when it upheld the district court's application of the five-level enhancement in a similar situation where the defendant solely utilized a peer-to-peer program to distribute child pornography. In that case, the Eastern District of Virginia Court applied the enhancement and relied upon the reasoning of the Eighth Circuit Court of Appeals in *United States v. Griffin*, 482 F.3d 1008 (8th Cir. 2007), however the defendant did not object to the enhancement at sentencing. *Id.* at 295. The Fourth Circuit thus reviewed the decision for plain error rather than a review of factual findings for clear error and legal conclusions *de novo* for preserved arguments. *Id.* at 292, 295.

4

There have been only three circuit courts of appeal that have directly addressed the issue of application of the instant five-level enhancement in relation to peer-to-peer use. In *Griffin*, the Eighth Circuit Court of Appeals affirmed application of the §2G2.2(b)(3)(B) for a defendant similarly situated to Sleezer who utilized a peer-to-peer program to distribute child pornography. 482 F.3d at 1013. The court held that peer-to-peer file sharing networks "exist - as the name 'file sharing' suggests - for users to share, swap, barter, or trade files between one another." *Id.* The Eighth Circuit progeny of *Griffin* have expounded upon the application of the enhancement in peer-to-peer file sharing cases by holding that ultimately the application of the enhancement is conducted on a case-by-case basis. See *United States v. Durham*, 618 F.3d 921 (8th Cir. 2010); *United States v. Ultsch*, 578 F.3d 827 (8th Cir. 2009).

Indeed, both the Tenth and Eleventh Circuits have also required that each case must be taken on a case-by-case basis and the determination as to whether to apply the enhancement is based upon the evidence presented to the sentencing court. See *United States v. Geiner*, 498 F.3d 1104 (10th Cir. 2007); *United States v. Vadnais*, 667 F.3d 1206 (11th Cir. 2012); *United States v. Spriggs*, 666 F.3d 1284 (11th Cir. 2012).

Tellingly, the name "peer-to-peer" (also known as "P2P") itself describes exactly the operation of peer-to-peer file sharing programs. If one person downloads and installs a particular peer-to-peer program on their computer they are then able to connect to other computers (their "peers") who have also installed that same program and then share and receive whatever files that the users of those computers place in a designated folder to share.

As this Court is likely aware, there exist many peer-to-peer file sharing programs, each with unique characteristics. Indeed in *Durham, Vadnais, Ultcsh*, the defendants utilized the

5

Limewire file sharing program. See 618 F.3d at 923; 667 F.3d at 1207; 578 F.3d at 828. Whereas the defendant in *Geiner* utilized the Gnutella network, and the defendant in *Spriggs* utilized the file sharing program Shareaza 2.0. See 498 F.3d at 1106; 666 F.3d at 1286. In each of these cases, various amounts of evidence were presented before the sentencing court.

In the present case, Sleezer utilized the file sharing program Ares 2.1. In order to install the Ares program on a computer, one must first seek out the program over the Internet and download it from one of the many websites which offer it. During the installation process, a user must click through at least five screens. Once the user clicks to download Ares, which has the accompanying label "peer-to-peer files sharing program," the user must then install Ares in order to begin using it. On the subsequent installation screen one must click to confirm installation. The next screen entitled "License Agreement," reads "P2P" at the top, and then informs potential users that P2P lets other users view contents of their shared folders online, and even goes on to warn that trafficking in child pornography is subject to criminal prosecution. The user must click, "I Agree" to move on to the next screen. The following screen is the "Choose Component" screen and allows the user to select where they will access the program on their computer (in this case Sleezer had placed access to the program on his desktop screen, meaning it was visible on his home screen after the computer was turned on). After clicking "Next" another screen pops up allowing the user to choose where the base files of the program will be stored and is entitled "Choose Install Location." The user then clicks "Install" and an installation progress screen next appears. Once installed, Ares automatically opens up on the computer and reveals the home screen for the program. This process is far different than a blind, one-time push-of-a-button that the defendant may suggest. Installing Ares is a multiple-step process involving seeking it out and

clicking through notices that clearly indicate it is a *file sharing* program. Indeed the defendant's own expert, Glenn Dardick, states that while there was no other evidence of distribution beyond the use of the Ares program, "the stated purpose of such programs are to share files." Def. Sent. Position, Attachment 1, p. 4.

Attachment 1 to the Government's sentencing position is a screen shot of the defendant's computer taken by agents as it was actively running when they executed the search warrant. It shows the Ares 2.1 program running and sharing 51 child pornography files with other users. In the lower left-hand corner of the screen, the Ares icon (the "A" logo) is also visible which gives ease of access on the desktop screen. Finally, the bottom folder on the left hand side also reveals that Sleezer had recently downloaded seven files through Ares. It is incongruous to believe that the defendant, who readily concedes that he was distributing through the Ares network, would not be expected to reach out, download and receive child pornography from other users on the Ares network. Further evidence also bears this out. The defendant possessed hundreds of other videos and images of child pornography that were manipulated and saved into other folders on his computer and onto two separate flash drives. One can logically infer that it was his Ares, peer-to-peer network which the defendant used to traffic in child pornography. In fact, most of the 51 child pornography files the defendant was actively distributing at the time of the search warrant were not available to the undercover agents several weeks prior who browsed the defendant's computer and downloaded the two videos from him. And those that were available to agents back at that time, were found saved in the other computer media separate from the Ares program.

In his sentencing position, the defendant further posits that he is an unsophisticated user

of computers and wireless networks by showing that he obtained his wireless adapter and high-gain wireless antenna from his brother-in-law. Def. Sent. Position, Attachment 2. The evidence, as noted above, suggests otherwise and demonstrates that in fact the defendant knew how to proficiently operate his computer and to manipulate the files contained therein. And further, concerning his illicit use of his neighbor's wireless connection, the defendant still had to connect the equipment, search available wireless networks, and then actually connect to the network regardless of how he merely obtained the equipment.

Finally, assuming, *arguendo,* that the Court grants the defendant's objection to application of the five-level enhancement, the appropriate guideline range would be reduced to 151-188 months as the two-level enhancement for distribution would still apply pursuant to U.S.S.G. §2G2.2(b)(3)(F), thus reducing the current total offense level by only three levels to a level 34. See *United States v. Layton,* 564 F.3d 330, (4th Cir. 2009) (affirming that two point distribution enhancement pursuant to §2G2.2(b)(3)(F) is permissible in peer-to-peer cases). This would be a correction to the PSR addendum which states that, should the objection be sustained, the guideline range would be reduced to 121-151 months and a level 32. PSR, p. A-2. It should also be noted that defense counsel appears to concur in this calculation in his sentencing position. Def. Sent. Position, pp. 6-7. Should the Court sustain the defendant's objection, the Government still maintains that a variance sentence of 144 months is sufficient but not greater than necessary to satisfy the factors set forth in 18 U.S.C. § 3553(a).

### III. Position on Sentencing

#### A. Nature and Circumstances of the Offense

The defendant's conduct in this matter is grave at best. The defendant came to the attention of law enforcement after agents downloaded child pornography videos, which the defendant had made available for sharing, from the defendant's computer over a peer-to-peer network. PSR ¶ 6. The defendant's actions caused agents to dramatically disrupt the lives of innocent bystanders, the defendant's neighbors, all because he had stolen their wireless Internet connection in order to use it to engage in heinous, criminal activity. *Id.* When agents did ultimately execute a warrant at the appropriate residence they discovered the defendant actively engaged in the exact criminal activity they were investigating, i.e. distribution of child pornography files (51) over the Ares peer-to-peer network. *Id.* Moreover, forensic analysts discovered that the defendant had amassed a large cache of almost 500 child pornography videos and another 393 child pornography images all involving the most egregious of material. PSR ¶ 7. As noted in the PSR, 32 of these videos were over 25 minutes in length, and one was over an hour in length. *Id.*

The defendant sought to perpetuate the exploitation of the abused, child victims in these videos and images by sharing them over the Internet and collecting them to feed his own criminal obsession. It is clear that the defendant has an unhealthy, deviant obsession with the sexual abuse of children. Such behavior must be reflected in any sentence imposed by this Court. The volume of images, the scope of the defendant's illicit collection, the defendant's distribution of such material, and the defendant's victimization of children warrant a substantial prison sentence of 144 months.

9

## B. History and Characteristics of the Defendant

The defendant is 46 years-old, has no criminal history, and formerly served in the United States Army. PSR ¶¶ 16-18, 22, 39. The defendant reports having had three different jobs from 2004 up until the time of his arrest, including one job in 2007 where he quit after his employer asked that he position his computer monitor in such a way that his supervisors could observe his activity. PSR ¶¶ 41-42. The defendant has reported no mental health issues, and has had no history of psychological or psychiatric treatment prior to his arrest. PSR ¶ 35. However, he has clearly engaged in a pattern of sexual exploitation that suggests the need for a substantial sentence. The history and characteristics of this defendant reveal a man who has over time downloaded and saved for posterity hundreds of movies and images of child pornography, and has subsequently shared many of these over the Internet. This Court should take into account such persistent, egregious behavior when fashioning a sentence.

Also notably, the defendant underwent a pyschosexual evaluation conducted by Dr. Evan Nelson which he filed with the Court prior to the sentencing hearing. Following a bevy of tests and information collection, Dr. Nelson concluded that the defendant has "clearly" met the criteria to be labeled a pedophile. Defendant's Pyschosexual Evaluation, p. 13. And while, according to Dr. Nelson, such a diagnostic label covers conduct ranging from actual physical abuse of children to viewing child pornography, he thought the defendant such a risk to note that "Therapy on this issue will be an *imperative* in the future." Def. Pyschosexual Evaluation, p. 14 (emphasis added). Regardless of where the defendant falls at the present moment on the pedophilia continuum, the study clearly highlights the defendant's deviant obsession with the sexual abuse of children. Such factors must be taken into consideration by this Court when fashioning a sentence.

Further, while it is commendable that the defendant has attempted to provide some monetary compensation to his neighbors for his outrageous conduct, any sentence should also take into account the trauma he inflicted on them and his prolonged, illicit use of their bandwidth and Internet service in order to engage in the distribution of child pornography. A variance sentence of 144 months will adequately address the history as well as the positive and negative characteristics of this defendant.

**C. A Sentence of 144 Months Serves the Factors Set Forth in 18 U.S.C. §3553(a)(2)**

1. Seriousness of the Offense; Provide Adequate Punishment

It is irrefutable that the defendant's conduct is serious. The defendant actively searched for, downloaded, and possessed a substantial collection of material depicting child sexual abuse, and then freely shared such criminal material with other peer-to-peer file sharing users. The active distribution and possession of child pornography by individuals such as the defendant creates a market for its production which inevitably leads to the continuing abuse of children, and feeds an industry that causes untold physiological, emotional, and mental trauma to the child victims. *See Osborne v. Ohio*, 495 U.S. 103, 109-11 (1990); *United States v. McCalla*, 545 F.3d 750 (9th Cir. 2008). In *McCalla,* the Ninth Circuit discussed the rationale for severely punishing those involved in child pornography as follows:

> In enacting the Child Pornography Prevention Act, Congress specifically expressed the idea . . . that child pornography begets more child pornography regardless of its origin: "the existence of and traffic in child pornographic images . . . inflames the desires of child molesters, pedophiles, and child pornographers who prey on children, thereby increasing the creation and distribution of child pornography and the sexual abuse and exploitation of actual children who are victimized as a result of the existence and use of these materials . . .

11

*Id.* at 756 (quoting Pub.L. No. 104-208, § 121, 1996 HR 3610, 110 Stat. at 3009-27). *See also United States v. Sherman*, 268 F.3d 539, 547 (7th Cir. 2001) ("The possession, receipt and shipping of child pornography directly victimizes the children portrayed by violating their right to privacy, and in particular violating their interests in avoiding the disclosure of personal matters.").

Moreover, it is of paramount importance that the dissemination of child pornography be controlled because pedophiles often use child pornography to seduce other children into performing sexual acts. *See Osborne* 495 U.S. at 111; *United States v. Grimes*, 244 F.3d 375, 382 (5th Cir. 2001). The defendant was able to commit his crimes with frightening ease because child pornography images may be passed on quickly and readily over the Internet, which also necessarily increases the likelihood that such images will end up into the hands of pedophiles who will use them to groom child victims for abuse. By repeatedly downloading and distributing this child pornography, the defendant has directly encouraged the abuse of countless minors to produce the material he craves. A sentence of 144 months will adequately reflect the seriousness of the offense.

2. Need to Deter Future Criminal Conduct

If the defendant can indeed be deterred from the sexual exploitation of children, the best means of deterrence would be a substantial prison sentence, thus absolutely preventing access to the tools used to exploit children. He has demonstrated a perverse capacity to engage in a regular pattern of sexual deviancy involving children and to distribute, and consequently exploit, images of child sexual abuse. A variance sentence of 144 months will ensure that the defendant fully

appreciates the gravity of his conduct in this matter.

### 3. Need to Protect Public from Defendant's Future Criminal Conduct

It is evident that the defendant seeks to exploit the most vulnerable of society. The defendant's offenses are serious and he has been labeled a pedophile. The Court must protect the public from the risks presented by this defendant.

As this Court well knows, the distribution of child pornography images can ultimately haunt these victims for the rest of their lives. Only lengthy imprisonment will absolutely ensure that the defendant will not continue to abuse and exploit his victims in this way. A sentence of 144 months will ensure that any children that may have come into contact with him, including his victims, will be protected from him.

### 4. Need to Provide Treatment to Defendant

The defendant clearly has an unhealthy and criminal obsession with the sexual abuse and exploitation of children. The United States respectfully requests that the Court recommend that the Bureau of Prisons provide the defendant with whatever mental health services and sex offender treatment are available and appropriate.

## D. The Kinds of Sentences Available and Unwarranted Sentencing Disparities

In assessing the kinds of sentences available, the Court must consider the calculated guidelines, which in the instant case were calculated at a restricted range of 210-240 months. A sentence of 144 months is well below the statutory maximum of 240 months, but such a sentence also takes into account the aggravating facts of this case and is thus well above the statutory, mandatory minimum sentence of 60 months. This combination adequately accounts for the appropriate sentences available to the Court and ensures that the Court will not create an

13

unwarranted sentence disparity.

The Government further submits that a sentence of 144 months will avoid unwarranted sentencing disparities based on a review of child pornography cases decided by this Court. The mandatory minimum term of 60 months is a sentence that is reserved for the least of child pornography offenders. As this Court is well aware, child pornography cases most certainly vary in egregiousness. A pertinent review of the recent child pornography cases in this Court involving similarly situated defendants (convicted of distribution and receipt of child pornography) will help frame an appropriate sentence. The defendant has provided a laundry list of child pornography cases decided by the Court, however the Government will focus on those cases where the major conduct involved distribution and receipt of child pornography, and not production of child pornography, or the many cases where defendants have been convicted of distribution but where additional evidence showed actual, physical abuse of children invoking sentences from 180 months to 240 months or more.

In December 2011, in the case of *United States v. Charles Luther Hoover* (3:11-CR-150), this Court sentenced the defendant Hoover after he was convicted of one count of distribution of child pornography with a Criminal History I as in the instant case. In that case, Hoover, like Sleezer, utilized a peer-to-peer network to trade child pornography and was found to have possessed 1,819 images and movies of child pornography. Of that number, 270 constituted movies, which is well below the 473 movies (equating to 35,475 images per the sentencing guidelines) that Defendant Sleezer possessed in the instant case. This Court ultimately sentenced Hoover to 120 months of imprisonment.

In 2010, in *United States v. John Charles Willard* (3:10-CR-154), the defendant pled

guilty in this Court to one count of distribution of child pornography, as Sleezer has in the instant case, and also had a Criminal History I category. In that case, Willard, like Sleezer, was using a peer-to-peer network to trade child pornography. Agents recovered 392 images and videos of child pornography from the defendant's computer, and of that number only 67 were videos. The defendant in the instant case collected numbers of child pornography, 473 videos and 393 images, that dwarf those recovered in *Willard*. This Court ultimately sentenced Willard to 96-months imprisonment.

In 2012, in *United States v. Kerry Todd Michau,* (3:11-CR-377), the defendant pled guilty to receipt of child pornography and had a Criminal History I. The defendant had, for guideline purposes, over 50,000 images of child pornography, higher than Sleezer's number of 35,868 images. However, Michau was only sharing 19 files via peer-to-peer network, was fully cooperative from the outset with authorities, and maintained his own wireless Internet connection. This Court sentenced in the defendant to 96-months imprisonment.

In December 2012, in *United States v. Christopher Todd Matthews* (3:12-CR-138), the defendant pled guilty to distribution of child pornography after distributing videos over a peer-to-peer network. A subsequent forensic examination of his computer revealed that the defendant had saved 152 videos of child pornography, again, far less than the 473 videos and 393 images of child pornography recovered in the present case. Additionally none of the videos in *Matthews* contained sadomasochistic conduct, unlike the instant case. This Court, specifically The Honorable Robert E. Payne, sentenced the defendant to 96-months imprisonment.

In *United States v. Carlos Santos* (3:09-CR-195), the defendant pled guilty in this Court to one count of receipt of child pornography pursuant to a plea agreement, a charge less

egregious than defendant's conviction for distribution of child pornography. In that case the defendant was found to possess 25,000 images of child pornography. The Court sentenced Santos, who also had a Criminal History I, to 108-months imprisonment.

Two cases in particular before this Court, and specifically before The Honorable Robert E. Payne, demonstrate the types of child pornography cases warranting the mandatory minimum sentence of 60 months for receipt and distribution of child pornography offenses. In *United States v. Matthew Russo* (3:09-CR-191), the defendant was detected attempting to access child pornography from a website with no evidence of distribution. A total of 523 child pornography images and no videos were found in the defendant's computer's temporary Internet cache after he had merely viewed them from a website and had not purposefully saved them in folders on his computer. Russo was convicted of attempted receipt of child pornography and subsequently sentenced to 60-months imprisonment.

Finally, in *United States v. Jerry Davis* (3:12-CR-180), the defendant pled guilty to distribution of child pornography and was sentenced to 60 months imprisonment after being detected trading child pornography over a peer-to-peer network. The defendant was found to possess 250 videos of child pornography and two images. Beyond accounting for the lesser number of images, the Government recommended a sentence of 60 months because the defendant was 66 years-old, suffered from brain damage, brain aneurisms, bacterial staph infections, delirium, and was taking Methadone, Vicodin, Prozac, HCTZ, and Albuterol.

In other courts across the county, lengthy sentences for defendants–even first offenders–who sexually exploit minors are not uncommon, particularly for defendants with no history of actually sexually abusing children. *See United States v. Salvatierra,* 268 Fed.Appx. 516 (9th Cir. 2008)

16

(upholding a sentence of 210 months as reasonable for defendant convicted of one count of receipt and one count of possession of child pornography; sentence was enhanced for distribution, but no prior record was mentioned); *United States v. Ostrander*, 2008 WL 5273317 (8th Cir. Dec. 22, 2008) (unpublished) (180-month sentence for receipt of child pornography reasonable; court properly considered §3553(a) factors including defendant's lack of criminal history, family situation, and testimony of defendant's many supporters); *United States v. Stoterau*, 524 F.3d 988, 1014 (9th Cir. 2008) (upholding a 151-month sentence for a defendant's first offense for transporting child pornography, despite evidence he was abused as child, suffered mental health issues, and had a lifelong struggle with drug addiction, where the district court reasonably could have concluded that sentence was necessary to reflect the seriousness of offense, promote respect for the law, and provide adequate deterrence for that type of criminal conduct).

A sentence of 144 months in this case clearly avoids an unwarranted sentencing disparity, and, given the defendant's conduct, will place the defendant in the heartland of sentences handed down by this Court, as well as others around the country.

## IV. Conclusion

The Government is cognizant of the defendant's lack of criminal history. However, consideration of the nature and circumstances of this case and the history and characteristics of the defendant pursuant to §3553(a)(1) suggest that a variance sentence of 144 months is appropriate. Such a sentence reflects the seriousness of his conduct and will place him in line with other similarly situated defendants.

For the reasons stated above, the United States submits that a sentence of 144 months is sufficient but not greater than necessary to address the factors set forth in 18 U.S.C. § 3553(a).

17

Respectfully Submitted,

NEIL H. MACBRIDE
UNITED STATES ATTORNEY

By: _____\\s\\_____
Samuel E. Fishel
Special Assistant United States Attorney
Virginia Bar Number 48280
Office of the Virginia Attorney General
900 East Main Street
Richmond, Virginia 23219
804-786-3870
804-786-0142 (fax)
sfishel@oag.state.va.us

CERTIFICATE OF SERVICE

I hereby certify that on the 11th day of July 2013, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

>Michael HuYoung, Esquire
>606 Paragon Place
>Richmond, VA 23230
>Phone: (804) 414-1602
>
>Patrick H. Raible
>United States Probation Officer
>701 East Broad Street, Suite 1150
>Richmond, VA 23219
>Phone: (804) 916-2520

\s\
Samuel E. Fishel
Special Assistant United States Attorney
Virginia Bar Number 48280
Office of the Virginia Attorney General
900 East Main Street
Richmond, Virginia 23219
804-786-3870
804-786-0142 (fax)
sfishel@oag.state.va.us